IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| William T. Burton and | ) | |
| Katherine Burton | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | CIVIL ACTION FILE NO.: |
| v. | ) | |
| | ) | |
| The City of Adairsville, Georgia, | ) | 4:14-cv-99-HLM |
| Robert Jones, Danny Moore, | ) | _____ ) |
| Michael Baldwin and Cathy | ) | |
| Dale in their Individual and | ) | |
| Official Capacities, | ) |    Jury Trial Demanded |
| | ) | |
|     Defendants. | ) | |

COMPLAINT FOR DAMAGES

Now come William Burton and Katherine Burton, the Plaintiffs in the above-styled civil action and present their Complaint for Damages against the Defendants, the City of Adairsville, Georgia, Robert Jones, Danny Moore, Michael Baldwin and Cathy Dale in their official and individual capacities as follows:

JURISDICTION AND VENUE

1.

This is an action arising under 42 USCA §1983 for violation the Plaintiff's Due Process rights under the 4th and 14th Amendments to the U.S. Constitution. This Court therefore has subject-matter jurisdiction over this action pursuant to 28 U.S.C.A. §§1331 and 1343.

2.

This Court has supplemental jurisdiction over the remainder of the Plaintiffs' claims which arise under the laws of the State of Georgia pursuant to 28 U.S.C.A. §1367.

3.

Plaintiffs William and Katherine Burton are residents of Floyd County, Georgia, and they hereby subject themselves to the jurisdiction of this Court.

4.

Defendant City of Adairsville may be served with process pursuant to F.R.C.P. 4 and OCGA §9-11-4 by service upon Adairsville Mayor Pro-Tem Buddy Bagley and/or upon Adairsville City Manager Pam Madison at their normal place of business, 116 Public Square, Adairsville, Georgia 30103.

5.

Upon information and belief Defendant Jones is a resident of Bartow County and he can be served with process at his normal place of business, the Adairsville Police Department at 100 Public Square, Adairsville, Georgia 30103.

6.

Upon information and belief Defendant Moore is a resident of Bartow County and he can be served with process at his normal place of residence, 23 Adair Hollow Road, NW Adairsville, Georgia 30103-5417.

7.

Upon information and belief Defendant Baldwin is a resident of Bartow County, Georgia and he can be served with process at his normal place of business, the Adairsville Police Department at 100 Public Square, Adairsville, Georgia 30103.

8.

Upon information and belief Defendant Dale is a resident of Bartow County and she can be served with process at her normal place of residence, 300 Gail Street, NW, Adairsville, Georgia 30103-4639.

9.

Based upon the foregoing, this Court has personal jurisdiction over each of the Defendants.  Venue is proper in this Court pursuant to 28 U.S.C.A. § 1391.

PARTIES

10.

The City of Adairsville is a municipal corporation formed under the laws of the State of Georgia.  The Adairsville Police Department is a division of Adairsville city government.

11.

At all relevant times Defendant Jones was employed by the City of Adairsville in the position of Chief of Police for the Adairsville Police Department. All of this Defendant's acts described herein were conducted in his individual capacity, and were conducted in his capacity as an officer and employee of the City of Adairsville.  Defendant Jones is the ultimate authority for the City of Adairsville in charge of operations, development of policy, procedures, training and supervision of officers and employees of the Adairsville Police Department.

12.

At all relevant times Defendants Moore, Baldwin and Dale were employed by the City of Adairsville as officers and employees of the Adairsville Police Department.  Their acts and omissions outlined herein were conducted in their individual capacities, and were conducted in their capacities as officers and employees of the City of Adairsville.

FACTS

13.

Plaintiff William Burton has never been convicted of a felony.  He was previously in lawful possession of two firearms: a rifle and a shotgun.

14.

On May 21, 2012 Mr. Burton pawned the two firearms at the Evergreen Pawn Shop in Adairsville, Georgia. As a matter of routine, staff at the pawn shop provided copies of the pawn tickets to the Adairsville Police Department so that they could confirm the history and ownership of the firearms.

15.

At the time, Defendant Dale was employed as an Administrative Assistant and terminal operator for the City of Adairsville Police Department.

16.

In connection with the pawn ticket she received, Defendant Dale improperly and unnecessarily obtained a criminal background report on one "Timothy Burton" from the GCIC division of the GBI. Defendant Dale did not obtain a criminal background report on Plaintiff William Burton.

17.

Timothy Burton is William Burton's brother. Over the years, Timothy Burton has had a number of felony convictions.

18.

The GCIC report that Defendant Dale obtained was absolutely clear that it pertained to Timothy Burton, not William Burton. The report on Timothy Burton

showed that he had been convicted on a number of felony charges.  It also showed that he had used "William Burton" as an alias.

19.

Upon information and belief, Defendant Dale had insufficient knowledge, training or experience in the reading, review or interpretation of GCIC reports. She did not review the GCIC report, she did no further investigation of any type into the information that she received from GCIC, nor was she qualified to conduct any such investigation.

20.

Nonetheless, Defendant Dale provided a copy of the GCIC report to Defendant Moore and she falsely communicated to him that the GCIC report referred to William Burton, not Timothy Burton.  She did so for the specific purpose of bringing about the arrest of William Burton.

21.

At the time, Defendant Moore was employed as a Major with the City of Adairsville Police Department.

22.

Upon information and belief, Defendant Moore had insufficient knowledge, training or experience in the reading, review or interpretation of GCIC reports.

Defendant Moore either did not review the GCIC report, or he fully read the report and was therefore aware that it did not pertain to Plaintiff William Burton.

23.

Despite the fact that the GCIC report referred to Timothy Burton and not William Burton, on the basis of the report, Defendant Moore drafted false affidavits in which he swore that William Burton was a convicted felon in possession of firearms, which itself is a felony.

24.

Defendant Moore then presented the false affidavits to the Bartow County Magistrate Court, and on the basis of the false information in the affidavits, the Court issued warrants for the arrest of William Burton on charges of convicted felon in possession of firearms in violation of the criminal laws of the State of Georgia.

25.

When Defendant Moore obtained the warrants, he was well aware, or with even minimal effort would have ascertained that the information in his affidavit was false, and that the arrest warrants against William Burton were illegal.

26.

Around midnight on May 31, 2012, family members of William Burton called the Floyd County 911 call center and told them that he had been acting

strangely, and that he had exited a car and was walking home in the middle of the night. The family members asked that Floyd County Police conduct a routine welfare check on him.

27.

During that call, the family members also expressed concern that Mr. Burton may be a danger to his wife, Plaintiff Katherine Burton once he arrived at home.

28.

On the basis of that information, four Floyd County police officers arrived at Plaintiff's home and they entered the home to check on the welfare of the Plaintiffs.

29.

As the officers were entering the home, they received confirmation from Floyd County 911 of the outstanding, albeit illegal arrest warrants that Defendants had caused to be issued on William Burton.

30.

The officers cleared the home, confirming that Plaintiff Katherine Burton was not on the premises and was in no danger. The officers found that Mr. Burton had secreted himself in an attic behind an upstairs closet. Mr. Burton was an innocent man, had no knowledge of the illegal arrest warrants, and he had every legal right to try to avoid contact with officers in his own home.

31.

Had it not been for the Adairsville arrest warrants, FCPD would have left the scene after confirming that Katherine Burton was not present and was not in danger.  But because of the pending arrest warrants, FCPD called for their SWAT team to assist in removing Mr. Burton from the attic.

32.

But before executing the arrest warrants, the Floyd County officers tried to confirm that they were valid.  They were able to confirm that warrants had been issued for the arrest of William Burton on charges of convicted felon in possession of firearms, but in their inquiry with Floyd County 911 they could not confirm the underlying felony convictions.

33.

So Capt. Blalock of the FCPD contacted Bartow County 911, then made direct contact with Adairsville police officer Defendant Baldwin.  He did so for the express purpose of confirming that William Burton was in fact a convicted felon.

34.

In response to the inquiry, Defendant Baldwin obtained another criminal background report on Timothy Burton from the GCIC division of the GBI. Defendant Baldwin did not obtain a criminal background report on Plaintiff William Burton.

35.

Upon information and belief, Defendant Baldwin had insufficient knowledge, training or experience in the reading, review or interpretation of GCIC reports. Defendant Baldwin either did not review the GCIC report, or he fully read the report and was therefore aware that it did not pertain to Plaintiff William Burton.

36.

Defendant Baldwin then contacted Defendant Moore and informed him that a FCPD SWAT team was in the process of effecting an arrest of William Burton upon the warrants, and that they had called APD to confirm their validity.

37.

Defendant Baldwin asked Defendant Moore why the warrants were issued against William Burton and not Timothy Burton. At that moment, Defendant Moore was completely aware that the GCIC report pertained to Timothy Burton not William Burton, that his affidavits were false, that the arrest warrants were illegal and that FCPD SWAT would execute the illegal arrest warrants if he confirmed that Plaintiff was a convicted felon.

38.

Nonetheless, in response to Defendant Baldwin's inquiry, Defendant Moore lied and stated that the GCIC report did in fact refer to William Burton, and that

Defendant police Chief Jones had ordered him to take out the warrants against William Burton.

39.

Defendant Baldwin then confirmed to Capt Blalock of the FCPD that he was looking directly at the GCIC report on William Burton, and that he was in fact a convicted felon.  When he did so, he was fully aware that the GCIC report did not pertain to William Burton, and that FCPD SWAT was about to arrest William Burton on the illegal warrants.

40.

Upon confirmation from Defendants, FCPD executed the illegal arrest warrants.  Of course, Plaintiff continued to lawfully resist his arrest on what he was perfectly aware were illegal arrest warrants.

41.

Unfortunately, FCPD used full force to take Plaintiff into custody.  This included use of OC gas canisters, repeated use of tasers and use of asp batons to strike him.  Then FCPD shot Mr. Williams at least twice to effect his arrest.

42.

Based on the foregoing, the Plaintiffs suffered grave injuries, pain and suffering, tremendous medical and related expenses, loss of consortium and other injuries to be demonstrated by the evidence.

43.

As a direct result of the Defendants' wrongful conduct in obtaining false arrest warrants, Defendants foreseeably put into motion all of the events that occurred thereafter.  Those events include the wrongful arrest and the grave injuries sustained by William Burton in his lawful efforts to resist the illegal arrest.

44.

Based on the foregoing, and as set out below, Plaintiffs are entitled to an award of money damages from the Defendants.

## COUNT I –LIABILITY OF DEFENDANTS CITY OF ADAIRSVILLE AND ROBERT JONES IN HIS INDIVIDUAL CAPACITY UNDER 42 U.S.C.A. §1983 (4TH AMENDMENT)

45.

The Plaintiff hereby incorporates by reference in this Count the facts set out in paragraphs 10-44 above.

46.

William Burton was and is an innocent man.  As such, Plaintiff had a right under the 4th Amendment to be free from arrest without probable cause.

47.

Defendant Jones is the ultimate authority in charge of the development of policies, procedures, training and supervision of officers and employees for the City of Adairsville PD.  Jones therefore has a duty to implement appropriate policies and procedures, training and supervision of employees and officers to protect the public from violation of their rights secured under the U.S. Constitution, including the 4th Amendment right to be free from arrest absent probable cause.

48.

Defendant Jones was well aware that his officers and employees were being called upon to use GCIC criminal history reports as the basis for obtaining arrest warrants upon citizens, but that the officers and employees were unskilled in the use of GCIC reports.  This is well demonstrated in the fact that in this case alone, three different officers at three different times independently misused GCIC reports to bring about the arrest of William Burton.

49.

Based on this knowledge, and to protect the 4th Amendment rights of citizens, Jones had a duty to develop policies and procedures:

1) To ensure that no officer or employee use a GCIC report unless they had the proper skill to do so,

2) To ensure that no officer or employee use a GCIC report to effect an arrest unless they had the proper skill to do so,

3) To ensure that officers and employees properly use GCIC reports in conjunction with proper investigative techniques before affecting an arrest,

4) To ensure that each officer and employee receives training and certification in the proper use of GCIC reports before using them,

5) To put in place a program of supervision of employees and officers using GCIC reports by persons skilled in the use of said reports.

50.

Upon information and belief, Defendant Jones completely failed to develop or implement any policy or procedure listed above, and completely failed to implement any policy or procedure of any type to ensure the proper use of GCIC reports by officers and employees of the Adairsville Police Department.

51.

Upon information and belief, Defendant Jones completely failed to provide any training or supervision of any kind to the officers and employees of the Adairsville Police Department to ensure that they properly used GCIC reports.

52.

Based on the foregoing, Defendant Jones was well aware of the extreme risk that officers and employees of the City of Adairsville PD would misuse GCIC

reports to affect arrests without probable cause thereby violating citizen's rights secured under the 4th Amendment.  Jones was deliberately indifferent to that risk.

53.

Jones deliberate indifference described above lead directly to the unlawful arrest and violation of the 4th Amendment rights of William Burton (and all other resultant harm) described herein.

54.

Based on the foregoing, Defendant Jones in his individual capacity is liable to Plaintiff for his acts and omissions under 42 USCA §1983.  Because Jones Acts and omission were committed as the ultimate authority in charge of the Adairsville Police Department, his wrongful actions constitute the official policy and custom of the City of Adairsville which is therefore likewise liable to the Plaintiff.

55.

Plaintiff suffered great harm as a result of these tortious omissions which therefore give rise to the liability of the City of Adairsville and Defendant Jones in his individual capacity as set out herein.

COUNT II – LIABILITY OF DEFENDANTS MOORE, BALDWIN AND DALE

IN THEIR INDIVIDUAL CAPACITIES UNDER 42 U.S.C.A. § 1983 (4TH

AMENDMENT)

56.

The Plaintiff hereby incorporates by reference in this Count the facts set out in paragraphs 10-44 above.

57.

William Burton was and is an innocent man.  As such, Plaintiff had a right under the 4th Amendment to be free from arrest without probable cause.

58.

Defendant Dale obtained a GCIC report on Timothy Burton for no reason then she falsely represented to Defendant Moore that it was a GCIC report on William Burton, that it showed that he was a convicted felon and that because he was a convicted felon, he was in illegal possession of firearms.

59.

Defendant Dale made the false statements on purpose and she was fully aware that they would lead to the arrest of William Burton without probable cause. Defendant Dale was thereby deliberately indifferent to Mr. Burton's 4th Amendment right to be free from arrest without probable cause.

60.

Defendant Moore used the GCIC report on Timothy Burton for the purpose of preparing affidavits in which he falsely swore that William Burton was a convicted felon, and that he was therefore illegally in possession of firearms.  He used the false affidavits to obtain illegal arrest warrants on William Burton.

61.

Defendant Moore was later informed that Capt. Blalock of the FCPD was about to execute the warrants but was attempting to confirm that William Burton was a convicted felon.  At that time Defendant Moore was fully aware that he had based his affidavits on the GCIC report of Timothy Burton, not William Burton. He was aware that Plaintiff was not a convicted felon on that basis, but he lied, indicating that Defendant Jones had ordered him to obtain the warrants as written and that William Burton was in fact a convicted felon.

62.

Defendant Moore made the false statements on purpose and he did so with the specific intent of bringing about the illegal arrest of William Burton without probable cause.  Defendant Moore thereby was deliberately indifferent to Mr. Burton's 4th Amendment right to be free from arrest without probable cause.

63.

FCPD Capt. Blalock informed Defendant Baldwin that the FCPD was about to execute the arrest warrants, but he asked Defendant Baldwin to confirm that William Burton was a convicted felon.  At that time Defendant Baldwin had obtained a copy of Timothy Burton's GCIC report; he had not obtained William Burton's GCIC report.  He was fully aware that he did not have a GCIC report on William Burton; he nonetheless lied, informing Capt. Blalock that the GCIC report before him indicated that William Burton was in fact a convicted felon.

64.

Defendant Baldwin made the false statements on purpose and he did so with the specific intent of bringing about the illegal arrest of William Burton without probable cause.  Defendant Baldwin thereby was deliberately indifferent to Mr. Burton's 4th Amendment right to be free from arrest without probable cause.

65.

As a result of the foregoing, William Burton was illegally arrested without probable cause, and he suffered tremendous additional harm as set out in this complaint.

66.

Based on the foregoing, Defendants Moore, Baldwin and Dale are liable to the Plaintiffs in their individual capacities under 42 USCA §1983 for deliberate and reckless violation of William Burton's 4th Amendment rights.

COUNT III – LIABILITY OF DEFENDANTS CITY OF ADAIRSVILLE, JONES, MOORE, BALDWIN AND DALE IN THEIR INDIVIDUAL CAPACITIES UNDER 42 U.S.C.A. § 1983 (14TH AMENDMENT)

67.

The Plaintiff hereby incorporates by reference in this Count the facts set out in paragraphs 10-66 above.

68.

Under the 14th Amendment to the U.S. Constitution, persons have a right to be free from harm to their persons without Due Process of Law.

69.

Floyd County police officers executed the illegal warrants thereby arresting William Burton.  During the arrest, the officers used OC gas on Mr. Burton, they tased him repeatedly, they beat him with riot batons and they shot him at least two times.  All of these acts were performed to affect an illegal arrest without probable cause.  Plaintiff William Burton was severely injured as a result.

70.

All of the harmful acts of the FCPD were fully and obviously foreseeable results of the Defendants' actions described above in obtaining illegal arrest warrants upon William Burton.

71.

As a result, all of the Defendant's wrongful acts described above directly and proximately caused the violation of William Burton's 14th Amendment right to be free from harm to his person without Due Process.

72.

As a result, Defendants City of Adairsville, Jones, Moore, Baldwin and Dale in their individual capacities are liable to Plaintiff under 42 USCA §1983 for the violation of his 14th Amendment rights.


COUNT IV –LIABILITY OF DEFENDANTS MOORE, BALDWIN AND DALE

IN THEIR INDIVIDUAL CAPACITIES FOR

SLANDER AND LIBEL

73.

The Plaintiff hereby incorporates by reference in this Count the facts set out in paragraphs 10-44 above.

74.

Defendant Dale intentionally made false and defamatory statements about William Burton; in particular, she communicated to a third person, Defendant Moore that William Burton was a convicted felon.  Such statements constitute slander per se pursuant to OCGA §51-5-4-(a)(1).  At the time she made her false statements, Defendant Dale was fully aware that Defendant Moore would communicate them to the Court to obtain arrest warrants on William Burton. Defendant Dale through her false and defamatory statements caused great harm, damage, injury, expense, pain and suffering to William Burton.

75.

Defendant Dale's statements constitute slander, were intentional, were made with specific intent to cause harm to Mr. Burton, did in fact cause great harm, and she is therefore liable to Plaintiff in her individual capacity.

76.

Defendant Moore intentionally prepared and executed sworn affidavits containing false and defamatory statements about William Burton; in particular, he communicated to a third person, the Magistrate Court of Bartow County that William Burton was a convicted felon.

77.

Defendant Moore intentionally made false and defamatory statements about William Burton; in particular, he communicated to a third person, Defendant Baldwin that William Burton was a convicted felon.  Defendant Moore was well aware that Defendant Baldwin was going to communicate his defamatory statements directly to the FCPD in response to their inquiry.

78.

Such statements constitute slander per se pursuant to OCGA §51-5-4-(a)(1) and his affidavits constitute libel.  Defendant Moore through his false and defamatory statements and affidavit caused great harm, damage, injury, expense, pain and suffering to William Burton.

79.

Defendant Moore's statements and affidavit testimony constitute slander and libel, were intentional, were made with specific intent to cause harm to Mr. Burton, did in fact cause him grave harm, and he is liable to the Plaintiff in his individual capacity.

80.

Defendant Baldwin intentionally made false and defamatory statements about William Burton; in particular, he communicated to a third person, Floyd County police Captain Blalock that William Burton was a convicted felon.

Such statements constitute slander per se pursuant to OCGA §51-5-4(a)(1).

Defendant Baldwin through his false and defamatory statements caused great

harm, damage, injury, expense, pain and suffering to William Burton.

81.

Defendant Baldwin's statements constitute slander, were intentional, were

made with specific intent to cause harm to Mr. Burton, did in fact cause great

harm, and he is liable in his individual capacity to the Plaintiff.

82.

As a result of the foregoing, Plaintiffs are entitled to an award of damages

from Defendants Moore, Baldwin and Dale in their individual capacities.


COUNT V –LIABILITY OF DEFENDANTS MOORE, BALDWIN AND DALE

IN THEIR INDIVIDUAL CAPACITIES FOR

ASSAULT AND BATTERY

83.

The Plaintiff hereby incorporates by reference in this Count the facts set out

in paragraphs 10-44 above.

84.

All of the Defendant's acts and omissions for the purpose of affecting the

illegal arrest of William Burton were intentional, were made with specific intent to

cause harm to Mr. Burton, and did in fact result directly in the FCPD's arrest of the Plaintiff.

85.

During the arrest, Floyd County police officers used OC gas on Mr. Burton, they tased him repeatedly, they beat him with riot batons and they shot him at least two times.  All of these acts were performed to affect an illegal arrest without probable cause.  Plaintiff William Burton was severely injured as a result.

86.

The FCPD's harmful acts in affecting the illegal arrest of William Burton constitute tortious assault and battery.

87.

All of the harmful acts of the FCPD were fully and obviously foreseeable results of the Defendants actions described above in obtaining illegal arrest warrants upon William Burton.

88.

As a result, all of the Defendant's wrongful acts described above directly and proximately caused the tortious assault and battery upon the person of William Burton.

89.

As a result, Defendants Moore, Baldwin and Dale in their individual capacities are liable to Plaintiff for tortious assault and battery.

COUNT VI –LIABILITY OF DEFENDANTS MOORE, BALDWIN AND DALE

IN THEIR INDIVIDUAL CAPACITIES FOR

FALSE ARREST AND MALICIOUS PROSECUTION

90.

The Plaintiff hereby incorporates by reference in this Count the facts set out in paragraphs 10-44 above.

91.

All of Defendants Moore, Baldwin and Dale's acts and omissions described herein were for the malicious purpose of affecting the unlawful arrest of William Burton without probable cause.

92.

All of these Defendant's acts and omissions described herein were also for the purpose of affecting the unlawful and malicious prosecution of William Burton on false charges of being a convicted felon in possession of firearms. Those charges have since been dropped.

93.

All of these Defendant's acts and omissions for the purpose of affecting the illegal arrest and prosecution of William Burton were intentional, were made with specific intent to cause harm to Mr. Burton, and did in fact result directly in the arrest and attempted prosecution of the Plaintiff.

94.

These Defendant's acts and omissions for the purpose of affecting the illegal arrest and prosecution of William Burton constitute the torts of false arrest and malicious prosecution.

95.

As a result, Defendants Moore, Baldwin and Dale in their individual capacities are liable to Plaintiff for false arrest and malicious prosecution.

COUNT VII – GENERAL NEGLIGENCE OF DEFENDANT JONES IN HIS INDIVIDUAL CAPACITY

96.

The Plaintiff hereby incorporates by reference in this Count the facts set out in paragraphs 10-44 above.

97.

Defendant Jones is the ultimate authority in charge of the development of policies, procedures, training and supervision of officers and employees for the City of Adairsville PD.

98.

Defendant Jones was well aware that his officers and employees were being called upon to use GCIC criminal history reports as the basis for obtaining arrest warrants upon citizens, but that the officers and employees were unskilled in the use of GCIC reports.

99.

Jones therefore had a duty to implement appropriate policies and procedures, training and supervision of employees and officers to protect the public from harm resulting from the misuse of GCIC criminal history reports.

100.

At a minimum, Jones had a duty to develop policies and procedures:

1) To ensure that no officer or employee use a GCIC report unless they had the proper skill to do so,

2) To ensure that no officer or employee use a GCIC report to effect an arrest unless they had the proper skill to do so,

3) To ensure that officers and employees properly use GCIC reports in conjunction with proper investigative techniques before affecting an arrest,

4) To ensure that each officer and employee receives training and certification in the proper use of GCIC reports before using them,

5) To put in place a program of supervision of employees and officers using GCIC reports by persons skilled in the use of said reports.

101.

Upon information and belief, Defendant Jones completely failed to develop or implement any policy or procedure of any type to ensure the proper use of GCIC reports by officers and employees of the Adairsville Police Department.

102.

Upon information and belief, Defendant Jones completely failed to provide training or supervision of any kind to the officers and employees of the Adairsville Police Department to ensure that they properly used GCIC reports.

103.

Defendant Jones was negligent in his complete failure to institute appropriate policies, procedures, training and supervision of employees and officers in the proper use of GCIC criminal history reports.

104.

Defendant Jones' negligence lead directly to the unlawful arrest and all of the other injuries, damages and harm to William Burton.  Defendant Jones in his individual capacity is liable to Plaintiff for his negligent acts and omissions.

## COUNT VIII – LIABILITY OF DEFENDANTS MOORE, BALDWIN AND DALE IN THEIR INDIVIDUAL CAPACITIES FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

105.

The Plaintiff hereby incorporates by reference in this Count the facts set out in paragraphs 10-44 above.

106.

All of Defendants Moore, Baldwin and Dale's acts and omissions conducted for the purpose of causing the unlawful arrest of William Burton and all of the harm and damage associated with such arrest were conducted for the purpose of causing him extreme emotional discomfort.

107.

All of these Defendant's acts and omissions for the purpose of affecting the illegal arrest and William Burton and all of the requisite harm and damages he suffered as a result were intentional, were made with specific intent to cause harm

to Mr. Burton, and did in fact result directly in extreme physical harm, pain, suffering, fear, grief, anxiety and shock as a result of the intentional infliction of emotional distress.

108.

William Burton is entitled to an award of damages against Defendants Moore, Baldwin and Dale in their individual capacities as a result of the foregoing.

COUNT IX – LOSS OF CONSORTIUM

109.

The Plaintiffs hereby incorporate by reference in this Count the facts set out in paragraphs 10-108 above.

110.

As a result of all of the tortious conduct described throughout this complaint, both Plaintiffs experience untold suffering. Such suffering took a tremendous toll upon the Plaintiff's affections and the natural incidents of the Plaintiffs' marriage.

111.

Katherine Burton suffered the loss of her husband's services, affection and the incidents of their marriage as a result of the Defendant's wrongful conduct and the resultant injuries and damages.

112.

By virtue of the foregoing, Plaintiff Katherine Burton is entitled to an award of damages for loss of consortium.

## COUNT X – VICARIOUS LIABILITY OF THE CITY OF ADAIRSVILLE

113.

The Plaintiff hereby incorporates by reference in this Count the facts set out in paragraphs 10-44 and 73-112 above.

114.

The Plaintiff previously presented the City of Adairsville with proper, thorough and timely anti-litem notice of the state law claims against it.

115.

At all relevant times and at all times described in this complaint, the City of Adairsville was the insured upon a policy of liability insurance which provided liability coverage for the tortious acts and omissions of its officers and employees that lead to the liability cited in this complaint.

116.

By virtue of the foregoing, the Defendant City of Adairsville has waived its defense of sovereign immunity for all tortious acts and omissions described herein up to the policy limits of liability coverage.

117.

All of the tortious acts and omissions of the individual Defendants described above were conducted as employees, agents and servants of the Defendant City of Adairsville, and were conducted within the course and scope of their employment with the City of Adairsville.

118.

The Plaintiffs show that all of the tortious conduct of the individual employees if the City of Adairsville that is described in this complaint, in addition to constituting intentional torts under Georgia law, also constitute general negligence in the performance of their official functions as employees and agents of the City of Adairsville.

119.

As a result of the foregoing, the Defendant City of Adairsville is vicariously liable to the Plaintiffs for the tortious acts and omissions of the individual Defendants described herein by application of the Doctrine of Respondeat Superior, and is so liable for all intentional and negligent acts of the individual Defendants without regard for any claim of official immunity.

## COUNT XI – PUNITIVE DAMAGES AND ATTORNEY'S FEES

### 120.

The Plaintiff hereby incorporates by reference in this Count the facts set out in paragraphs 10-119 above.

### 121.

The facts set out in paragraphs 10-44 herein demonstrate the Defendants' willful misconduct, malice, wantonness, oppression, and an entire want of care giving rise to the presumption of Defendant's conscious indifference to consequences of their actions.  Defendants at a minimum, acted with specific intent to inflict severe physical and mental injury upon William Burton.

### 122.

Mr. Burton sustained severe injuries, pain and suffering, as a result of this wrongful conduct.

### 123.

As a result of the foregoing, Plaintiffs are entitled to an award of punitive damages from the Defendants.

### 124.

The Plaintiffs are entitled to an award of costs, attorney's fees and expenses of litigation as provided by law.

WHEREFORE, the Plaintiff prays for the following:

a)  That service of process be had upon each of the Defendants;

b)  That this case be tried before fair and impartial jurors;

c)  That the Plaintiff be awarded special damages to compensate him for monetary losses resulting from Defendants' conduct;

d)  That the Plaintiff be awarded general damages in an amount to be determined by the jury;

e)  That the Plaintiff be awarded punitive damages in an amount to be determined by the jury;

f)  That the Plaintiff be awarded costs, attorney's fees and litigation expenses in amounts to be demonstrated to the jury;

g)  That the Court provide all other relief that it deems appropriate.

This 29th day of April, 2014

PERROTTA & CAHN

S/ Robert W. Lamb
Anthony N. Perrotta
Georgia Bar Number: 572501
Robert W. Lamb
Georgia Bar Number: 631650

5 South Public Square
Cartersville, Georgia 30120
770.382.8900