IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

WILLIAM T. BURTON, ET AL.    )
         )
   Plaintiffs,         )   CIVIL ACTION FILE
         )   NO. 4:14-CV-99-HLM
v.         )
         )
THE   CITY   OF   ADAIRSVILLE,   )
GEORGIA, ET AL.         )
         )
   Defendants.         )

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS THE CITY OF ADAIRSVILLE, ROBERT JONES, DANNY MOORE, AND CATHY DALE'S MOTION FOR SUMMARY JUDGMENT**

COME NOW defendants the City of Adairsville, Robert Jones, Danny Moore, and Cathy Dale ("these defendants") and file this memorandum of law in support of their motion for summary judgment.

## I.    INTRODUCTION

Plaintiff William T. Burton ("Burton") pawned two firearms at Evergreen Pawnshop. Based on Burton's name and date of birth on the pawn ticket, a background check was performed by Adairsville Police Department ("APD") employee Cathy Dale ("Dale"), which revealed a number of felony charges. Following his investigation, APD Major Danny Moore ("Moore") sought and obtained warrants for the arrest of Burton on charges of convicted felon in

possession of firearms.  After the execution of those warrants by members of the Floyd County/City of Rome SWAT team, it was determined that the felony convictions were not for Burton, but his brother, Timothy Burton, as Timothy had previously used William Burton's name, DOB and SSN.

Burton and his wife Katherine Burton ("plaintiffs") filed this action on April 29, 2014 asserting federal and state law claims against the City of Adairsville (the "City"), APD Chief Robert Jones ("Jones"), Moore, Dale, and APD Officer Michael Baldwin ("Baldwin").  (Doc. 1.)  Under federal law, plaintiffs assert that Moore and Dale violated Burton's Fourth Amendment right to be free from arrest without probable cause for which the City and Jones are liable as well.  (Counts I and II.)  Plaintiffs also assert that these defendants collectively violated Burton's Fourteenth Amendment due process rights.  (Count III.)  Further, plaintiffs seek to recover against Moore and Dale under Georgia law for slander and libel (Count IV), assault and battery (Count V), false arrest and malicious prosecution (Count VI), intentional infliction of emotional distress (Count VIII), against Jones for negligence (Count VII), and against the City vicariously (Count X).  Additionally, plaintiffs seek to recover damages from these defendants for Katherine Burton's alleged loss of consortium (Count IX), as well as for punitive damages and attorney's fees (Count XI).  Because there is no material dispute of evidence to

support any of plaintiffs' claims against these defendants, and because plaintiffs' claims against them are otherwise barred by the doctrines of qualified and official immunity, these defendants are now entitled to summary judgment in their favor.

## II.   STATEMENT OF FACTS

For the sake of brevity, these defendants incorporate by reference their Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried ("SMF") pursuant to Fed. R. Civ. P. 10.

## III.   ARGUMENT AND CITATION OF AUTHORITY

### A.   Federal Claims Against The City (Counts I and III)

The City cannot be held liable for the alleged actions of the individual defendants based upon a respondeat superior theory of liability.  Board of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997).  Rather, a local government may be held liable under § 1983 only when a constitutional violation was inflicted pursuant to the government's policy or custom.  Monell v. New York City Dept. Of Social Services, 436 U.S. 658, 694 (1978).  Plaintiffs must prove: "(1) that [a] constitutional right [was] violated; (2) that the [City] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).  Here, because, as shown below, no constitutional

right was violated, there is no liability by the City.   City of Los Angeles v. Heller, 475 U.S. 796, 798-99 (1986); Mann v. Taser Intern., Inc., 588 F.3d 1291, 1309 (11th Cir. 2009).  Even if a substantive violation can be shown, moreover, there is no evidence to support Section 1983 liability.  There is no evidence that the City had a custom or policy that constituted a deliberate indifference to plaintiffs' constitutional rights or caused a constitutional violation, and "a single isolated incident is insufficient to establish a custom or policy under § 1983."  Harris v. Goderick, 608 F. App'x 760, 763 (11th Cir. 2015).   Plaintiffs' own law enforcement expert, Timothy S. Hunt ("Hunt"), testified that he had no opinion as to whether the City had an official policy or procedure that resulted in Burton's arrest.  (Hunt Depo., pp. 28-29.)  Accordingly, plaintiffs' federal claims against the City fail as a matter of law.

**B.**     **Federal Claims Against Jones, Moore, And Dale Barred By Qualified Immunity**[1]

The doctrine of qualified immunity shields government officials from liability to the extent that "their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Jones, Moore, and Dale are each entitled to

---

[1] Although plaintiffs named Jones, Moore, and Dale in their individual and official capacities, plaintiffs failed to assert in their complaint any claims against them in their official capacities.  (Doc. 1, pp. 12-33.)

qualified immunity because it is undisputed that they were acting within their discretionary authority at the time of the alleged constitutional violation.[2]   Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004).  Plaintiffs bear the burden of demonstrating that these individual defendants are not entitled to qualified immunity.  Id.  To meet this burden, plaintiffs must show that (1) Chief Jones, Moore, and Dale each engaged in conduct which violated William Burton's rights under the constitution; and (2) that their conduct was prohibited by clearly established law.  Plumhoff v. Rickard, 134 S. Ct. 2012, 2020 (2014).  In evaluating whether plaintiffs have met their burden, the Court may exercise its discretion in determining which step of the analysis it should first address.  Id.

## 1. No Constitutional Violation

### a. Fourth Amendment Wrongful Arrest Claim Against Chief Jones (Count I)

Like the City, absent a predicate constitutional violation, there should be no liability for Chief Jones.  Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009) (absent a violation of plaintiff's constitutional rights, sheriff and city entitled to

---

[2] Plaintiffs have admitted that Jones, Moore, and Dale were acting as officers and employees with the City and therefore within their discretionary authority. (Doc. 1, ¶¶ 11, 12, 17.)  See Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1267 (11th Cir. 2004) (concluding that the "discretionary action" element is met where officers' alleged actions "are of a type that fell within [their] job responsibilities.").

summary judgment).  Jones, moreover, cannot be held liable solely by virtue of his supervisory position.  Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). Rather, a supervisor can be held liable either when he personally participates in the alleged constitutional violation, or there is a causal connection between the supervisor's actions and the alleged constitutional violation.  Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007).  "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous."  Mann, 588 F.3d at 1308.

Plaintiffs can adduce no evidence that Chief Jones personally participated in any constitutional violation.    Indeed, Jones had no involvement with Moore's investigation or the arrest warrants or affidavits on Burton.  (Jones Depo., pp. 27, 92, 108, 116; Moore Depo., p. 111.)   Nor can plaintiffs establish a causal connection between any actions of Chief Jones and any alleged constitutional violation suffered by Burton.  A causal connection can be established (1) "when a history of widespread abuse puts the reasonable supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," or (2) "when a supervisor's custom or policy results in deliberate indifference to constitutional rights," or (3) "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to

stop them from doing so."   <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003).   Because there is no such evidence, plaintiffs' supervisory liability claim against Chief Jones fails as a matter of law.

As for plaintiffs claim that Chief Jones's liability is based, at least in part, on the absence of a policy, Jones may not be held liable under Section 1983 merely because he "failed to implement a policy that would have prevented an unconstitutional act by an employee otherwise left to his own discretion." <u>Atkinson v. City of Mountain View, Mo.</u>, 709 F.3d 1201, 1216 (8th Cir. 2013) (affirming summary judgment for city where plaintiff had alleged that no binding written policy existed on the use of force).   Plaintiffs cannot meet their burden simply by "point[ing] to something the city 'could have done' to prevent the unfortunate incident."   <u>City of Canton v. Harris</u>, 489 U.S. 378, 392 (1989).   In fact, the Constitution does not require that a law enforcement agency enact any written policy.   And the absence of a policy does not, by itself, establish causation sufficient to establish liability under Section 1983.   <u>Snow ex rel. Snow v. City of Citronelle</u>, 420 F.3d 1262, 1271 (11th Cir. 2005).

Likewise, plaintiffs' claims for failure to train and supervise officers and employees are unsupported by the evidence.   A "failure to train" officers can give rise to a cause of action in limited circumstances, but only if the failure "amounts

to deliberate indifference to the rights of persons with whom the police come into contact." Harris, 489 U.S. at 379; Gold v. City of Miami, 151 F.3d 1346, 1351 (11th Cir. 1998).  A plaintiff must show that the government knew that a need to train or supervise its employees existed but made a deliberate choice not to take any action.  Gold, 151 F.3d at 1350.  To prove that a local government knew of the need for supervision or training, a plaintiff must demonstrate a pattern of constitutional violations that placed the local government on notice of the need for corrective measures.  Young v. City of Augusta, Ga. Through DeVaney, 59 F.3d 1160, 1172 (11th Cir. 1995).

Here, there is no evidence that Chief Jones knew of a need to train or supervise the employees and officers of APD and made a conscious or deliberate choice not to take action.  No evidence has been revealed of a pattern or history of widespread abuse by officers. At most, plaintiffs have alleged one isolated incident.  This is insufficient to place Jones on notice of a need for training or "widespread abuse" constituting deliberate indifference.  Hawk v. Klaetsch, 522 Fed. Appx. 733 (11th Cir. 2013).

### b.   Fourth Amendment Wrongful Arrest Claim Against Dale And Moore (Count II)

For purposes of evaluating plaintiffs' § 1983 wrongful arrest claim, the analysis begins and ends with the existence of "arguable probable cause."  Lowe v.

Aldridge, 958 F.2d 1565, 1570 (11th Cir.1992).[3]  See also Rushing v. Parker, 599 F.3d 1263, 1266 (11th Cir. 2010).   "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." Rushing, 599 F.3d at 1266.

In cases of mistaken identity, where an officer erroneously swears an affidavit for the wrong party, qualified immunity will apply if the mistake was "reasonable."  See Tillman v. Coley, 886 F.2d 317, 320 (11th Cir.1989) (citing Hill v. California, 401 U.S. 797 (1971)); see also Chapman v. City of Atlanta, Georgia, 192 F. App'x 922, 924 (11th Cir. 2006) ("In order to determine whether there was a constitutional violation, [the court] must examine the totality of the circumstances to see whether the arrest was made pursuant to a reasonable mistake."). "Negligent or innocent mistakes do not violate the Fourth Amendment."  Maughon v. Bibb Cnty., 160 F.3d 658, 660 (11th Cir. 1998).

An analogy to the case at hand can be drawn from Post v. City of Fort Lauderdale, 7 F.3d 1552 (11th Cir.1993).  In Post, officers arrested a restaurant

---

[3] Although Lowe involved a search warrant application, the qualified immunity analysis is the same. See Malley v. Briggs, 475 U.S. 335, 344 n. 6 (1986); see also Brown v. Abercrombie, 151 F. App'x 892, 893 (11th Cir.2005) (applying arguable probable cause standard to application for arrest warrant).

owner for allegedly violating the maximum occupancy code in his restaurant.  The officers counted people in excess of the restaurant's maximum capacity (twenty-two).  However, there were less than twenty-two people in the restaurant; so, there was actually no violation.  The owner sued for false arrest among other claims.  The officials asserted a qualified immunity defense.  The Eleventh Circuit, in affirming qualified immunity to the officers, stated, "[h]ere, the issue is not whether the [officers'] head counts were, in fact, correct; ... [instead, t]he issue material to qualified immunity is whether a reasonable officer in [the officers'] place-that is, in these circumstances-could have believed that more than 22 customers were present."  Id. at 1558.  The Court ultimately held that the officers had arguable probable cause to arrest the restaurant owner, despite the fact that the exonerating evidence was right before their eyes—officers simply had to correctly count the number of patrons at the restaurant. They could have counted more carefully, and conferred with management in order to find out which individuals were employees (and therefore should not have been counted).  Nevertheless, the Court found that their mistake was reasonable even though the exonerating evidence was in front of them.

Drawing from similar reasoning, while Moore made a mistake in interpreting the background report provided by Dale to be that of Burton, it was a

reasonable mistake.  Dale used the name and date of birth information on the pawn ticket to obtain the criminal background report.  (Dale Depo., pp. 9, 46-47, 62-65, 77-80.)  In the FQ received from GCIC, William Burton's name was listed below Timothy Burton's name with an ("AKA") next to it, and William's DOB from the pawn ticket was also listed under known associated DOBs.[4]  (Moore Depo., pp. 71-72, 74-75. Compare Hunt Depo., Exhibit 32, p. 4 with p. 21.) The report identified a "Convicted Felon" and showed convictions for a number of felony charges. (Dale Depo., p. 81; Hunt Depo., Exhibit 32, p. 21.)  Therefore, Moore's arrest affidavit on Burton, although mistaken, was such that "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[s' knowledge] could have believed that probable cause existed to arrest." Case, 555 F.3d at 1327.  This is bolstered by the fact that when Baldwin contacted Bartow 911 to obtain a GCIC FQ on Burton based on his name, social security number, and date of birth, Bartow mistakenly sent him the criminal history for Timothy Burton with William Burton listed as well and not William Burton's printout.  (See Audio Recording Between Blalock, Baldwin and Bartow 911.)  Moore's conduct here is the type that qualified immunity is meant to protect: "a reasonable mistake

---

[4] While the report lists names as aliases or AKAs, DOBs are not separated or identified in such a manner. They are merely all listed in the same spot. (Moore Depo., pp. 75-76; Hunt Depo., Exhibit 32, p. 21.)

in the legitimate performance of [an officer's] duties." Kingsland v. City of Miami, 382 F.3d 1220, 1233 (11th Cir. 2004). See also Rushing, 599 F.3d at 1267.

Although plaintiffs' expert, Hunt, opines that Dale and Moore's investigation may not have been perfect, it was not "plainly incompetent" and police officers "are not required to perform error-free investigations." Kingsland, 382 F.3d at 1229 n. 10, 1231. Nor can plaintiffs adduce evidence that Dale or Moore "knowingly violated the law." Id. In order to "defeat summary judgment because of a dispute of material fact, a plaintiff facing qualified immunity must produce evidence that would allow a fact-finder to find that no reasonable person in the defendant's position could have thought the facts were such that they justified the defendant's acts." Post, 7 F.3d at 1557. Plaintiffs cannot meet their burden in this case.[5]

### c.   Fourteenth Amendment Due Process Claim Against These Defendants (Count III)

#### i.   Procedural Due Process

---

[5] Additionally, the evidence is clear that Dale did nothing wrong. Even plaintiffs' own police procedures expert agreed that while he would have liked to have seen Dale do something more to verify the identity of William Burton v. Timothy Burton, ultimately the responsibility to make that determination rested with Moore, and Dale was correct in turning the GCIC printout over to him for further investigation. (Hunt Depo., pp. 37-41.)

To state a procedural due process claim, plaintiffs must show: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." Arrington v. Helms, 438 F.3d 1336, 1347 (11th Cir. 2006).  Parratt v. Taylor, 451 U.S. 527, 541–44 (1981), "and its progeny hold that a deprivation of liberty or property is not cognizable under Section 1983 when a state's post-deprivation remedies are adequate to protect a victim's procedural due process rights." See also Goodman v. City of Cape Coral, 581 F. App'x 736, 739 (11th Cir. 2014) ("We have repeatedly articulated the basic rule that a procedural due process violation has not occurred when adequate state remedies are available.").  In that regard, the Eleventh Circuit has held that there is no procedural due process violation when there is "an adequate post-deprivation remedy under state law."  Morefield v. Smith, 404 F. App'x 443, 445 (11th Cir. 2010).   Here, because plaintiffs have made state law claims for false arrest and malicious prosecution, they have access to adequate post-deprivation remedies and thus have not established a violation of their procedural due process rights. See, e.g., Jackson v. Hamm, 78 F. Supp. 2d 1233, 1245 (M.D. Ala. 1999).

## ii.   *Substantive Due Process*

To the extent plaintiffs' complaint attempts to state a § 1983 claim based on an alleged violation of substantive due process rights, plaintiffs' claim fails

because the law is clear that when there exists a specifically enumerated Constitutional right pursuant to which a § 1983 claim can be alleged, a claim for a violation of substantive due process will not lie.  County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998); Graham v. Connor, 490 U.S. 386, 389 (1989); Tesch v. County of Green Lake, 157 F.3d 465, 472 (7th Cir. 1998).  Because plaintiffs' allegations of false arrest invoke claimed protections against unreasonable seizure under the Fourth Amendment, their claim for a violation of substantive due process pursuant to the Fourteenth Amendment is subject to summary judgment.

### 2.     No Violation of Clearly Established Law

Jones, Dale, and Moore are also entitled to qualified immunity because they did not violate clearly established law.  As the Supreme Court recently explained:

> [A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.  In other words, "existing precedent must have placed the statutory or constitutional question" confronted by the official "beyond debate."  In addition, "[w]e have repeatedly told courts ... not to define clearly established law at a high level of generality," since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.

Plumhoff, 134 S. Ct. at 2022; see also Priester v. Cty. of Riviera Beach, Fla., 208 F.3d 919, 926 (11th Cir. 2000).  The Eleventh Circuit has held "many times" that

"if case law, in factual terms, has not staked out a bright line, qualified immunity **almost always** protects the defendant."  Id. at 926 (emphasis added); Coffin v. Brandau, 642 F.3d 999, 1015 (11th Cir. 2011) (citations and punctuation omitted). Stated another way, a "plaintiff cannot rely on general, conclusory allegations or broad legal truisms to show that a right is clearly established." Kelly v. Curtis, 21 F.3d 1544, 1550 (11th Cir. 1994) (citations and punctuation omitted).[6]

As addressed above, the relevant case law confirms that the individual defendants acted lawfully.  Because plaintiffs cannot sustain their burden of showing that the individual defendants violated clearly established law, they are each entitled to qualified immunity.

## C.   Jones, Dale, And Moore are Entitled to Official Immunity as to Plaintiffs' State Law Claims Against Them

Plaintiffs' state law claims against Jones, Dale, and Moore are barred by official immunity.  The doctrine of official immunity is enshrined in the Georgia Constitution.  Ga. Const. of 1983, Art. I, Sec. II, Par. IX(d).  Under the doctrine, "while a public officer or employee may be personally liable for his negligent *ministerial acts*, he may not be held liable for his *discretionary acts* unless such

---

[6] The law can be clearly established for qualified immunity purposes only by decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Georgia Supreme Court.  Jenkins v. Talladega Cty. Bd. of Educ., 115 F.3d 821, 823 n.4 (11th Cir. 1997) (en banc).

-15-

acts are willful, wanton, or outside the scope of his authority." <u>Gilbert v.</u>
<u>Richardson</u>, 264 Ga. 744, 752, 452 S.E.2d 476, 482 (1994) (citation omitted)
(emphasis added).   In other words, "a public officer or employee may be
personally liable only for ministerial acts negligently performed or [discretionary]
acts performed with malice or an intent to injure." <u>Golden v. Vickery</u>, 285 Ga.
App. 216, 217, 645 S.E.2d 695, 696 (2007).

### 1.    Jones, Dale, And Moore Were Performing Discretionary Functions

"A ministerial act is commonly one that is simple, absolute, and definite,
arising under conditions admitted or proved to exist, and requiring merely the
execution of a specific duty." <u>Common Cause/Georgia v. Cty. of Atlanta</u>, 279 Ga.
480, 482, 614 S.E.2d 761, 764 (2005); <u>Kelly v. Lewis</u>, 221 Ga. App. 506, 508, 471
S.E.2d 583, 587 (1996).  "A discretionary act, however, calls for the exercise of
personal deliberation and judgment, which in turn entails examining the facts,
reaching reasoned conclusions, and acting on them in a way not specifically
directed." <u>Id.</u>

It is well-settled that decisions with respect to drafting or implementing
policies and employment decisions, such as training and supervision, are

discretionary in nature.[7]   Likewise, decisions to perform a background check, investigate, obtain an arrest warrant and to effectuate an arrest, even if flawed, are discretionary.[8]

---

[7] See e.g., Polk Cty. v. Ellington, 306 Ga. App. 193, 202, 702 S.E.2d 17, 25 (2010) (finding that "any failure…to draft a particular policy or to implement the existing policy, either through training or otherwise, constitutes a discretionary act"); Murdock v. Cobb Cnty., 1:12-CV-01743-RWS, 2013 WL 2155465 at *13 (N.D. Ga. May 17, 2013) ("decisions regarding…what degree of training and supervision is necessary are discretionary in nature rather than ministerial"); Doss v. City of Savannah, 290 Ga. App. 670, 675, 660 S.E.2d 457, 462 (2008) ("Employment decisions, including the retention, hiring and *supervision* of employees, necessarily require consideration of numerous factors and the exercise of deliberation and judgment. They are therefore precisely the types of administrative action the discretionary function exception seeks to shield from judicial second-guessing."); White v. Traino, 244 Ga. App. 208, 211, 535 S.E.2d 275, 277 (2000) (supervising the execution of a search warrant is a discretionary act); Lowe v. Jones Cnty., 231 Ga. App. 372, 373, 499 S.E.2d 348, 350 (1998) ("The operation of a police department, including the degree of training and supervision to be provided its officers, is a discretionary governmental function of the municipality as opposed to a ministerial, proprietary, or administratively routine function.").

[8] See, e.g., Marshall v. Browning, 310 Ga. App. 64, 67, 712 S.E.2d 71, 74 (2011) (officer "was acting within her discretionary authority in investigating the case, obtaining search and arrest warrants, and in executing those warrants"); Reed v. DeKalb Cnty., 264 Ga. App. 83, 86, 589 S.E.2d 584, 587 (2003) ("the decision to effectuate a warrantless arrest generally is a discretionary act requiring personal judgment and deliberation on the part of the officer"); Anderson v. Cobb, 258 Ga. App. 159, 160, 573 S.E.2d 417, 419 (2002) (The decision to seek an arrest warrant is a discretionary act); Cty. of Atlanta v. Heard, 252 Ga. App. 179, 182, 555 S.E.2d 849, 853 (2001) (finding that arrest, even if flawed, was discretionary); Carter v. Glenn, 249 Ga. App. 414, 416, 548 S.E.2d 110, 113 (2001) (finding that the acts of a mayor and police chief in performing background checks were "discretionary," and thus, the claims against the mayor and chief were barred by official immunity); McDaniel v. Yearwood, No. 2:11-CV-00165-RWS, 2012 WL 526078, at *20

## 2.     No Evidence Of Actual Malice Or Actual Intent To Injure

Because Jones, Dale and Moore were at all times performing discretionary functions, they can be held liable only if they acted with "actual malice [which] requires a deliberate intention to do wrong and denotes express malice or malice in fact." Adams v. Hazelwood, 271 Ga. 414, 414-15, 520 S.E.2d 896, 898 (1999) (internal citations and punctuation omitted); Valades v. Uslu, 301 Ga. App. 885, 890, 689 S.E.2d 338, 343 (2009) ("actual malice requires a deliberate intention to do wrong").  There is absolutely no evidence that Dale, Moore, or Jones acted with actual malice or the actual intent to cause plaintiffs harm.  Evidence of negligence, gross negligence, and even willful, wanton or reckless conduct, moreover, is insufficient to establish the actual malice or actual intent to cause injury required to overcome official immunity.  Russell v. Barrett, 296 Ga. App. 114, 119, 673 S.E.2d 623, 628 (2009); Wallace v. Greene Cnty., 274 Ga. App. 776, 780, 618 S.E.2d 642, 647 (2005); Hanse v. Phillips, 276 Ga. App. 558, 563, 623 S.E.2d 746, 750 (2005).  Even assuming Dale and Moore performed a deficient investigation, this has no impact on whether they acted with actual malice.  See Anderson, 258 Ga. App. at 160, 573 S.E.2d at 419 (rejecting argument that lack of probable cause and failure to investigate further prior to seeking arrest warrant constituted actual

(N.D. Ga. Feb. 16, 2012) ("[e]ven when an arresting officer operates on a mistaken belief that an arrest is appropriate, official immunity still applies.").

malice for purposes of official immunity).  Because there is no evidence that Dale, Moore, or Jones acted with actual malice, official immunity bars all of plaintiffs' state law claims against them.

### D.   Jones, Dale, and Moore Are Entitled to Summary Judgment on the Substance of Plaintiffs' State Law Claims

#### 1.   Count IV (Slander and Libel) Against Moore and Dale

Plaintiffs' defamation claim (both libel and slander) fail because the statements at issue were made in good faith in the performance of a public duty and are therefore privileged.  See O.C.G.A. § 51-5-7(1).  Georgia law recognizes two type of privilege, absolute and conditional.  Saye v. Deloitte & Touche, LLP, 295 Ga. App. 128, 130, 670 S.E.2d 818, 821 (2008). Communications and publications that are deemed absolutely privileged free the speaker from any liability to the person injured by the words or the publication.  Saye, 295 Ga. App. at 130, 670 S.E.2d at 821.   Moreover, when the privilege is absolute, the motive of the publication is immaterial, the question of malice is not open, and all inquiry into good faith is closed.  Id. at 130, 670 S.E.2d at 821.   Therefore, "communications which are afforded an absolute privilege cannot form the basis of a defamation action, regardless of the falsity of the statements or the speaker's malicious intent." Id.

In this case, because any alleged defamatory statements are alleged to have been made in conjunction with a public duty, they are absolutely privileged pursuant to O.C.G.A. § 51-5-7(1).  There is also no evidence in the record which would indicate that these defendants' "actions…were undertaken maliciously or in reckless disregard of the truth. Instead, it appears unconverted that [they] acted in a good-faith attempt to protect [the public] from a real or imagined threat of injury." Tetrault v. Shelton, 179 Ga. App. 746, 747, 347 S.E.2d 636, 637 (1986). Moreover, an "affidavit upon which the warrant issued affords no basis for a recovery under a defamation theory." Id.  Therefore, plaintiffs' defamation claim fails as a matter of law.

### 2.     Count V (Assault and Battery) Against Moore and Dale

An act of physical violence inflicted on the person of another, which is not necessary, is not privileged, and which constitutes a harmful or offensive contact, constitutes an assault and battery.  Vasquez v. Smith, 259 Ga. App. 79, 82, 576 S.E.2d 59, 61 (2003).  Here, however, it is undisputed that neither Moore nor Dale personally used any force against Burton nor directed anyone to do so.  Moreover, because there is no evidence that they acted with a deliberate intention to do wrong, official immunity bars plaintiffs' assault and battery claims against them.

### 3.     Count VI (False Arrest and Malicious Prosecution) Against Moore and Dale

False arrest and malicious prosecution require that plaintiffs establish a lack of probable cause and malice.  O.C.G.A. § 51-7-1.  Wal-Mart Stores, Inc. v. Blackford, 264 Ga. 612, 613, 449 S.E.2d 293, 294 (1994); Barber v. H & H Muller Enterprises, Inc., 197 Ga. App. 126, 129, 397 S.E.2d 563, 565 (1990).   As shown above, Moore and Dale's good faith identification, though erroneous, coupled with Moore's investigation and subsequent probable cause affidavit established the probable cause necessary for Burton's arrest.  See Mayor & Aldermen of City of Savannah v. Wilson, 214 Ga. App. 170, 173, 447 S.E.2d 124, 128 (1994) overruled on other ground by Ferrell v. Mikula, 295 Ga. App. 326, 672 S.E.2d 7 (2008).  It is also undisputed that neither Moore nor Dale physically arrested Burton. Additionally, there is no evidence of malice to support these claims or to overcome the official immunity defense.

### 4.   Count VII (Negligence) Against Chief Jones

In order to establish a claim of negligence generally, a plaintiff must prove "the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages."  Seymour Elec. & Air Conditioning Serv., Inc. v. Statom, 309 Ga. App. 677, 679, 710 S.E.2d 874, 877 (2011).  Here, there is no evidence that Jones was negligent or breached any

duty of which he owed to plaintiffs with respect to policies, procedures, training or supervision of employees at APD.

Assuming there was any such duty that Jones breached (which there was not), this could not rationally be attributed as a cause of plaintiffs' alleged harm. "No matter how negligent a party may be, if his act stands in no causal relation to the injury[,] it is not actionable." Statom, 309 Ga. App. at 679, 710 S.E.2d at 877. "[T]o survive summary judgment, the evidence of causation must be based on more than mere guesses or speculation." Id.  Plaintiffs cannot establish, as a matter of law, that Jones was the cause of plaintiffs' alleged damages.  Moreover, there is no evidence of actual malice to overcome Jones's official immunity defense.

### 5.    Count VIII (Intentional Infliction of Emotional Distress) Against Moore and Dale

In order to establish a claim for intentional infliction of emotional distress, plaintiffs must establish: (1) intentional or reckless conduct; (2) that was extreme and outrageous; (3) that is causally related to emotional distress suffered by plaintiff; and (4) that the emotional distress plaintiff has experienced is severe. Sevcech v. Ingles Markets, Inc., 222 Ga. App. 221, 223, 474 S.E.2d 4, 7 (1996). Here, plaintiffs can adduce no evidence that Moore or Dale acted intentionally or recklessly.  There is no evidence that they acted with the purpose of causing any unlawful arrest on Burton.  Nor is there any evidence that Moore or Dale

committed any inherently outrageous acts which could conceivably support a claim for intentional infliction of emotional distress.

Georgia courts have held that "it has not been enough that the defendant has acted with an intent which is tortious or even criminal…[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Northside Hosp., Inc. v. Ruotanen, 246 Ga. App. 433, 435, 541 S.E.2d 66, 69 (2000).  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Metro. Atlanta Rapid Transit Auth. v. Mosley, 280 Ga. App. 486, 491, 634 S.E.2d 466, 470 (2006). "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." Renton v. Watson, 319 Ga. App. 896, 903, 739 S.E.2d 19, 26 (2013).  Here, Moore and Dale's actions can only be attributed to a reasonable mistake, rather than extreme or outrageous conduct.  Accordingly, plaintiffs' claim fails on this ground alone.  Id. (finding that false allegations in arrest warrant was not so

atrocious or utterly intolerable as to rise to the level of intentional of infliction of emotional distress).

Additionally, there is no evidence that plaintiffs suffered **severe** emotional distress.  "To demonstrate that the emotional distress [he] suffered was **severe**, a plaintiff must show, at the very least, that physical and/or mental manifestations of that distress required her to seek medical or psychological treatment."  Howerton v. Harbin Clinic, LLC, No. A15A0141, 2015 WL 4313433, at *12 (Ga. Ct. App. July 16, 2015).  Fear, anxiety, and shock, moreover, do not rise to the level of **severe** emotional distress.  See, e.g., Sneed v. SEI/Aaron's, Inc., 1:13-CV-982-TWT, 2013 WL 6669276 at *4 (N.D. Ga. Dec. 18, 2013); Ghodrati v. Stearnes, 314 Ga. App. 321, 324, 723 S.E.2d 721, 723 (2012).  Plaintiffs have not sought medical or psychological treatment as a result of any alleged distress suffered and consequently have not suffered **severe** emotion distress. Plaintiffs therefore cannot establish at least one of the elements of this claim apart from the absence of malice that supports official immunity.

### 6.    Count IX (Loss of Consortium)

Katherine Burton alleges that she suffered the loss of her husband's services, affection and the incidents of their marriage.  (Doc. 1, ¶ 11.)  A loss of consortium claim is derivative of the spouse's personal injury action.  Miller v. Crumbley, 249

Ga. App. 403, 404 (2001); Supchak v. Pruitt, 232 Ga. App. 680, 683 (1998). If the injured spouse cannot recover as a matter of law, then there is no liability for the non-injured spouse's loss of consortium claim. Holloway v. Northside Hosp., 230 Ga. App. 371, 371 (1998); Supchak, 232 Ga. App. at 683. Because the underlying tort claims against these defendants fail as a matter of law, likewise Katherine's derivative loss of consortium claim must fail.

**7.   Count X (Vicarious Liability) Against The City**

The doctrine of vicarious liability applies to impute liability to an employer for the employee's conduct within the scope of his employment. Hankerson v. Hammett, 285 Ga. App. 610, 647 S.E.2d 319 (2007). Georgia law provides that "[e]very person shall be liable for torts committed by . . . his servant by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily." O.C.G.A. § 51-2-2. Because the individual defendants did not commit any tortious acts, plaintiffs' claim against the City fails. Further, under Georgia law, a city "shall not be liable for the torts of policemen or other officers engaged in the discharge of the duties imposed on them by law." O.C.G.A. § 36-33-3. See also Campbell v. Goode, 304 Ga. App. 47, 695 S.E.2d 44 (2010) (holding that city's purchase of liability insurance did not

waive its sovereign immunity from liability for the breaking of a citizen's arm during an encounter with police officers).

### 8.  Count XI (Punitive Damages and Attorney's Fees)

The City and the individual defendants in their official capacities are immune from punitive damages under federal and state law.  See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 259-60 (1981); Metro. Atlanta Rapid Transit Auth. v. Boswell, 261 Ga. 427, 428, 405 S.E.2d 869, 870 (1991).  Additionally, should plaintiffs' claims fail as a matter of law, their claims for punitive damages and attorney's fees will also fail.  See OFS Fitel, LLC v. Epstein, Becker & Green, P.C., 549 F.3d 1344, 1357 (11th Cir. 2008); J. Andrew Lunsford Properties, LLC v. Davis, 257 Ga. App. 720, 722, 572 S.E.2d 682, 685 (2002).  Plaintiffs has also adduced no evidence of "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences" or bad faith or stubborn litigiousness to justify an award of punitive damages under O.C.G.A. § 51-12-5.1 or attorney's fees under O.C.G.A. § 13-6-11.

### IV.   CONCLUSION

For the reasons stated above, these defendants are entitled to judgment as a matter of law and this Court should grant summary judgment in their favor.

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

*/s/ Wayne S. Melnick*
Wayne S. Melnick
Georgia Bar No. 501267
wmelnick@fmglaw.com
A. Ali Sabzevari
Georgia Bar No. 941527
asabzevari@fmglaw.com

Attorneys for Defendants The City of Adairsville, Georgia, Robert Jones, Danny Moore, and Cathy Dale

100 Galleria Parkway
Suite 1600
Atlanta, Georgia  30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned counsel hereby certifies that the foregoing memorandum of law was prepared in Times New Roman 14-point font, in compliance with Local Rule 5.1(C).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this date served the within and foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS THE CITY OF ADAIRSVILLE, ROBERT JONES, DANNY MOORE, AND CATHY DALE'S MOTION FOR SUMMARY JUDGMENT** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants.  Counsel of record is:

| | |
|---|---|
| Anthony N. Perotta, Esq. | Samuel L. Lucas, Esq. |
| Robert W. Lamb, Esq. | J. Anderson Davis, Esq. |
| Perrotta Cahn & Prieto, P.C. | Brinson Askew Berry Seigler |
| 5 South Public Square | Richardson & Davis, LLP |
| Cartersville, GA  30120 | Post Office Box 5007 |
| | Rome, GA 30162-5007 |
| | |
| Wade C. Hoyt, III, Esq. | Kenneth D. Jones, Esq. |
| The Hoyt Firm | Jeffrey Daniel, Esq. |
| Post Office Box 5005 | Hall Booth Smith, P.C. |
| Rome, GA 30162-5005 | 191 Peachtree Street, N.E. |
| | Suite 2900 |
| | Atlanta, GA 30303-1775 |
| | |
| Ronald R. Womack, Esq. | |
| Steven Rodham, Esq. | |
| Womack, Gottlieb & Rodham, P.C. | |
| Post Office Box 549 | |
| LaFayette, GA 30728 | |

This 6th day of July, 2016.

[SIGNATURE ON FOLLOWING PAGE]

**FREEMAN MATHIS & GARY, LLP**

*/s/ Wayne S. Melnick* 
Wayne S. Melnick
Georgia Bar No. 501267
wmelnick@fmglaw.com

100 Galleria Parkway
Suite 1600
Atlanta, Georgia  30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)