IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| WILLIAM T. BURTON AND KATHERINE BURTON, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>THE CITY OF ADAIRSVILLE, GEORGIA, ROBERT JONES, DANNY MOORE, MICHAEL BALDWIN, AND CATHY DALE in their Individual and Official Capacities, )<br>)<br>Defendants. ) | CIVIL ACTION FILE<br>NO. 4:14-CV-99-HLM |

## STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANTS THE CITY OF ADAIRSVILLE, GEORGIA, ROBERT JONES, DANNY MOORE, AND CATHY DALE'S MOTION FOR SUMMARY JUDGMENT

COME NOW defendants the City of Adairsville, Georgia, Robert Jones, Danny Moore, and Cathy Dale (collectively referred to herein as "these defendants") and, pursuant to Local Rule 56.1(B)(1), file this Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment, showing the Court as follows:

1.

On May 1, 2012, William Burton ("William") pawned two firearms at the Evergreen Pawn Shop ("Evergreen" or "the pawn shop") in Adairsville, Georgia. (W. Burton Depo., p. 42; Moore Depo., Exhibit 1.)

2.

Consistent with the policy of the Adairsville Police Department ("APD" or the "Department"), Evergreen provided copies of the pawn ticket to APD, and APD sought to confirm the history and ownership of the firearms as well as to make a determination as to whether the person who pawned the firearm was a convicted felon. (Dale Depo., pp. 50, 52-55, 75, 62-63; Moore Depo., pp. 45, 55, 60; Jones Depo., p. 85.)

3.

Cathy Dale, who was at the time an administrative assistant and the GCIC full terminal operator ("FTO") for APD, received the pawn ticket on William Burton. (Dale Depo., pp. 9, 76-77; Jones Depo., pp. 77-78.) Using the name and date of birth ("DOB") information provided on the pawn ticket, Dale obtained a short form ("IQ") criminal background report. That background report identified the name and DOB as being associated with an FBI number indicating an associated criminal history. (Dale Depo., pp. 46-47, 62-65, 77-80.)

4.

Because the IQ returned an FBI number indicating an associated criminal history, Dale ran a full criminal background report ("FQ") for the FBI number provided. (Dale Depo., p. 80.) That report resulted in the FQ for a "Timothy Burton." (Dale Depo., p. 110; Moore Depo., pp. 71-72.) William Burton's name was listed below Timothy Burton's name on the FQ with an "AKA" next to it, and William's DOB from the pawn ticket was also listed under known associated DOBs. (Moore Depo., pp. 71-72, 74-75. Compare Hunt Depo., Exhibit 32, p. 4 with p. 21.) While the FQ lists names as aliases or "AKAs," DOBs and SSNs are not separated or identified in such a manner; they are merely all listed. (See Moore Depo., pp. 75-76; Hunt Depo., Exhibit 32, p. 21.)

5.

Timothy Burton ("Timothy") is William's brother and had previously used William's name, date of birth, and social security number. There had been some past confusion between William's identifying information and Timothy's identifying information and William was aware of this prior to the subject incident. (W. Burton Depo., pp. 33-37.)

6.

The report Dale obtained identified a "Convicted Felon" and showed convictions for a number of felony charges. (Dale Depo., pp. 81-83; Hunt Depo., Exhibit 32, p. 21.)

7.

Dale provided a copy of the GCIC report along with the pawn ticket to APD Major Danny Moore. (Dale Depo., pp. 81-83; Moore Depo., p. 76, Exhibit 6.)

8.

On the report, Dale specifically noted both "felon" and that it needed to be checked out, which was her way of noting that a review and further investigation needed to be done. (Dale Depo., pp. 67, 72, 82-83; Moore Depo., p. 76; Hunt Depo., Exhibit 32, pp. 6, 20-21.)

9.

Moore reviewed the report and then went to Evergreen to obtain additional information regarding the seller. Moore informed Evergreen that the person who had pawned the firearms was listed as a convicted felon. He also placed a hold on and took pictures of the firearms as well as obtained telephone contact information for the seller. Moore also told Evergreen that if William Burton ever came in to

have him call Moore or come by the police department to talk to him. (Moore Depo., pp. 62-66, 80, Exhibit 6.)

10.

Although Moore tried to get in touch with the firearms seller via the telephone number on the pawn ticket, the person he ultimately reached informed him that he had the wrong number. Moore then contacted Evergreen and verified that he indeed had the correct number listed by the seller at the pawn shop. Moore also obtained William Burton's sister's number. Moore then called and left a voicemail with Burton's sister, but his call was never returned. (Moore Depo., pp. 64-65, Exhibit 6.)

11.

Moore drafted an affidavit for an arrest warrant for William Burton, because that was what he understood to be the name of the person who pawned the guns and who was a convicted felon. Moore presented the affidavit to the Bartow County Magistrate Court, which issued warrants for the arrest of William Burton on charges of convicted felon in possession of firearms. (Moore Depo., pp. 93-95, 99, 105, 140-42, Exhibit 4.)

12.

APD Chief Robert Jones had no involvement with Moore's investigation, the arrest warrants, or affidavits on William Burton.  (Jones Depo., pp. 92, 108; Moore Depo., p. 111.)

13.

On May 31, 2012, William Burton's daughter and sister called the Floyd County 911 call center and told them that William had been acting strangely; and that after William's sister had dropped him off at a church following his release from a "10-13" (involuntary mental health commitment), William was walking home.  (See 911 Console 7 Audio Recordings; Katherine Burton Depo., pp. 52-53; Harkins Depo., pp. 22-23; Harkins Depo., Exhibit 3, p. 3.)  They also informed 911 that William had a heart condition and also that he had previously been violent and had made threats to his daughter and wife, plaintiff Katherine Burton ("Katherine").  (See 911 Console 7 Audio Recordings; Harkins Depo., pp. 19, 22-23; Lemming Depo., p. 27.)  They asked that the Floyd County Police Department ("FCPD") conduct a welfare check on William.  (See 911 Console 7 Audio Recordings; Harkins Depo., pp. 22-23; Lemming Depo., p. 25.)

14.

Despite the request by William's daughter and sister that a welfare check be performed on William, FCPD Captain George Lemming, Sergeant Joshua Harkins, Officer Ginger Ramey and Officer Drew Desai were dispatched to William's home to conduct a welfare check on Katherine, not on William, as dispatch informed the officers that William had made death threats towards his wife.  (Harkins Depo., pp. 22-24, 28-29; Lemming Depo., pp. 22, 25-27, 32; Ramey Depo., pp. 19, 21-22, 32.)

15.

Sergeant Harkins and Officer Desai walked to the front door of the residence while Captain Lemming and Officer Ramey took up positions at the rear of the residence.   (Harkins Depo., p. 28; Lemming Depo., p. 32.)

16.

Captain Lemming and Sergeant Harkins thereafter made entry into the residence, not out of any concern for the welfare of William, but because the officers believed that family violence may be occurring, someone may be inside, and there may be weapons. (Harkins Depo., pp. 41, 69; Lemming Depo., p. 69.)

17.

Before entering the residence, however, FCPD knew that Katherine was away from the residence.  (Ramey Depo., pp. 41-42; Harkins Depo., Exhibit 3, pp. 3, 4; See 911 Console 7 Audio Recordings.)

18.

Once inside the residence, it was discovered that active felony warrants were in effect for William.  (Harkins Depo., p. 59.)

19.

Sergeant Harkins and Captain Lemming found that William had secreted himself in the crawl space behind an upstairs closet.  (Harkins Depo., pp. 56, 59; Lemming Depo., p. 79.)

20.

Sergeant Harkins attempted to talk to William and get a response, but William was silent.  (Harkins Depo., pp. 56, 90-91; Lemming Depo., pp. 79-81.)

21.

Captain Lemming then called for their SWAT team to assist them in removing William from the crawl space.  (Lemming Depo., p. 81; Ewing Depo., p. 18.)

22.

Members of the SWAT team arrived on the scene.  Their four man entry team, consisting of Christopher Hovers, Brandon Ekey, Michael Johnson and William Schwartz, made entry into the residence and relieved the FCPD officers inside.  (Lemming Depo., p. 96; Harkins Depo., pp. 55-58, 67; Ewing Depo., p. 29.)  SWAT then cleared the house and went up to the attic to try to begin negotiations with William.  (Ewing Depo., p. 29.)  SWAT attempted to communicate with William for approximately an hour, but there was no response.  (Ewing Depo., pp. 30-31.)

23.

At some point, Captain John Blalock, who was at the time working for FCPD and was the SWAT team liaison to the chief of police, arrived on the scene and was informed that William had an outstanding warrant.  (Blalock Depo., pp. 12-13, 16, 19.)

24.

Captain Blalock had the Floyd County jail run William Burton's criminal history, but was notified that the jail booking deputy could not find a felony

conviction on William Burton.  (Blalock Depo., pp. 25-27, 50-51; See Audio Recording Between Blalock, Baldwin and Bartow 911.[1])

25.

Based on that information, Captain Blalock called Bartow County 911 who then put him directly in touch with APD Officer Michael Baldwin, the night shift officer who was on duty. (Blalock Depo., pp. 25-27, 50-51; Baldwin Depo., p. 46; See Audio Recording Between Blalock, Baldwin and Bartow 911.)

26.

In response to the inquiry, Baldwin returned to the police headquarters and called Moore, who was asleep at home.  (Moore Depo., pp. 106-07, 111, 119; Baldwin Depo., pp. 49, 54.)  Baldwin testified that Moore verified that the warrants were valid and that Moore wanted Floyd County to take William into custody. (Baldwin Depo., pp. 49, 54.)  Moore testified, however, that he instructed Baldwin to contact the Floyd County officer back to obtain more information, to obtain a GCIC report from Bartow County 911 on the subject to see if he was a convicted felon, and that he (Moore) would be coming down to the police

---

[1] This audio recording along with the 911 Console 7 Audio Recordings are being filed contemporaneously herewith, with the proper redactions of sensitive information and personal identifiers in accordance with Standing Order No. 04-02.

department. (Moore Depo., pp. 120-30.) Moore testified that he never instructed Baldwin in what he was to tell Floyd County. (Moore Depo., pp. 133-34, 136.)[2]

27.

Baldwin provided Bartow County 911 with the name "William T. Burton," William Burton's date of birth and social security number, and asked that 911 run a criminal history. (Baldwin Depo., pp. 61, 69; See Audio Recording Between Blalock, Baldwin and Bartow 911.)

28.

Bartow County 911 obtained a GCIC report and faxed it to Baldwin. (Baldwin Depo., pp. 61, 69; See Audio Recording Between Blalock, Baldwin and Bartow 911.)

29.

Bartow County 911 mistakenly sent Baldwin a printout for Timothy Burton, with William Burton listed as well, and not a criminal history for William Burton. (Compare Audio Recording Between Blalock, Baldwin and Bartow 911, 17:00-18:10 [Baldwin stating "First cycle is burglary," name is "Timothy Lee Burton," and "he's got about 4 or 5 aliases here"] with Hunt Depo., Exhibit 32, pp. 21-22

---

[2] The conflict between Baldwin and Moore's testimony is not material for purposes of these defendants' motion for summary judgment.

- 11 -

[GCIC printout indicating that first cycle is for burglary and that subject's name is Timothy Lee Burton along with 5 aliases].)

30.

Baldwin reviewed the GCIC report and confirmed to Captain Blalock that William Burton was a convicted felon. (Blalock Depo., pp. 122, 124; Baldwin Depo., p. 46; See Audio Recording Between Blalock and Baldwin.)

31.

According to Moore, when he arrived, Baldwin told him that he (Baldwin) had confirmed the warrants to Floyd County and gave Moore a copy of the GCIC report obtained from Bartow 911. (Moore Depo., pp. 133-36.)

32.

Moore went home never having any contact with Blalock or anyone from Floyd County on the night in question. (Moore Depo., pp. 134, 135; Blalock Depo., p. 41.)

33.

Once Captain Blalock received confirmation from Baldwin, FCPD SWAT made the decision to introduce OC gas canisters, and when that was unsuccessful in getting William to surrender, FCPD SWAT made the decision to attempt to extract William from the attic by having Ekey, Hover, Schwartz, and Johnson enter

the crawl space leading to where William was hiding. (Ewing Depo., pp. 29, 31, 39, 40, 45.)

34.

Hovers and Ekey, the first two officers, found William in a very small area at the end of the crawl space hiding beneath some loose insulation. They announced, and Hovers demanded that William show his hands. When no response was given, Ekey deployed his Taser. William began fighting the officers and got the Taser from Ekey. The officers somehow got Tased, and at that point, Hovers fired one round at William. William continued fighting even after he was shot and did not stop until Hovers shot him a second time. (Hovers Depo., pp. 46, 50, 53, 56-57, 59-64; Ekey Depo., pp. 53-56, 60-70.)[3]

35.

After the shooting, it was later determined that the felony convictions were for Timothy Burton and not William Burton, and William Burton is in fact not a convicted felon. (Dale Depo., p. 110; W. Burton Depo., p. 21; Moore Depo., pp. 149-50.)

---

[3] Although a dispute exists between William Burton and Hovers and Ekey's recollection as to what occurred in the attic, these disputes are not material for purposes of these defendants' motion for summary judgment.

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

*/s/ Wayne S. Melnick*
Wayne S. Melnick
Georgia Bar No. 501267
wmelnick@fmglaw.com
A. Ali Sabzevari
Georgia Bar No. 941527
asabzevari@fmglaw.com

Attorneys for Defendants The City of Adairsville, Georgia, Robert Jones, Danny Moore, and Cathy Dale

100 Galleria Parkway
Suite 1600
Atlanta, Georgia  30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served the within and foregoing **STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANTS THE CITY OF ADAIRSVILLE, GEORGIA, ROBERT JONES, DANNY MOORE, AND CATHY DALE'S MOTION FOR SUMMARY JUDGMENT** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants. Counsel of record is:

| | |
|---|---|
| Anthony N. Perotta, Esq.<br>Robert W. Lamb, Esq.<br>Perrotta Cahn & Prieto, P.C.<br>5 South Public Square<br>Cartersville, GA  30120 | Samuel L. Lucas, Esq.<br>J. Anderson Davis, Esq.<br>Brinson Askew Berry Seigler<br>Richardson & Davis, LLP<br>Post Office Box 5007<br>Rome, GA 30162-5007 |
| Wade C. Hoyt, III, Esq.<br>The Hoyt Firm<br>Post Office Box 5005<br>Rome, GA 30162-5005 | Kenneth D. Jones, Esq.<br>Jeffrey Daniel, Esq.<br>Hall Booth Smith, P.C.<br>191 Peachtree Street, N.E.<br>Suite 2900<br>Atlanta, GA 30303-1775 |
| Ronald R. Womack, Esq.<br>Steven Rodham, Esq.<br>Womack, Gottlieb & Rodham, P.C.<br>Post Office Box 549<br>LaFayette, GA 30728 | |

This 6th day of July, 2016.

[signature on next page]

**FREEMAN MATHIS & GARY, LLP**

*/s/ Wayne S. Melnick*
Wayne S. Melnick
Georgia Bar No. 501267
wmelnick@fmglaw.com

100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)